THOMAS F. NOLAN vs. BOSTON ELEVATED RAILWAY
COMPANY.

Suffolk.   April 1, 1930. — May 27, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & FIELD, JJ.

*Negligence*, Contributory, Street railway, In use of way.

At the trial of an action by a traffic police officer against a street railway
company, for personal injuries received when in a traffic box in which
he was standing in the performance of his duties at the intersection
of two streets where four street car lines and much vehicular traffic
passed, it appeared that the box was struck by a street car of the
defendant which had stopped at the intersection and which the plain-
tiff had signalled to proceed; that, when the plaintiff went on duty,
the box had been so placed that it would not be struck by any of the
passing street cars; that street cars had passed for forty-five minutes
before the accident at a time when traffic was "very heavy" and none
had struck the traffic box; that nothing had struck the box before
the defendant's street car, but the box had moved nearer one of the
street car tracks; that, if the plaintiff had looked down, he would
have seen that the box had moved too near the track; that he had
not looked down and had not so observed because "the traffic was so
busy there that his whole attention was taken up with the traffic;
[and] that he heard no warning of any sort prior to the time of col-
lision between the car and the box." *Held*, that
(1) It could not properly have been ruled as a matter of law that
negligence of the plaintiff contributed to his injury;
(2) The question, whether the defendant's motorman was negli-
gent, was for the jury;
(3) It was proper for the judge to refuse to rule that the "motor-
man of the defendant's car had a right to rely upon the plaintiff's
signal";
(4) It was proper for the judge to refuse to rule that the "motor-
man had a right to assume, upon the plaintiff's signal, that the plain-
tiff's traffic box was not in a position where it would be hit by the
car";
(5) A verdict for the plaintiff was warranted.

TORT for personal injuries.   Writ dated March 21, 1927.

In the Superior Court, the action was tried before *Hanify*,
J.   Material evidence and rulings requested by the defend-
ant and refused by the judge are described in the opinion.

There was a verdict for the plaintiff in the sum of $3,500. The defendant alleged exceptions.

*S. C. Rand,* for the defendant.

*M. C. Kelleher,* for the plaintiff.

PIERCE, J.   This is an action of tort to recover damages for personal injuries, alleged to have been sustained by the plaintiff as a result of an accident which occurred on July 26, 1926, at the corner of Massachusetts Avenue and Boylston Street, Boston, when the traffic box in which the plaintiff, a traffic officer of the city of Boston, was standing came upon or was so near the tracks of the Boston Elevated Railway that it was struck by a car of the defendant.   The case was tried to a jury and a verdict returned for the plaintiff. It now comes before this court on the exceptions of the defendant to the refusal of the judge to direct a verdict in its favor, to his refusal to give certain requests for rulings, and to the denial of the defendant's motion that the judge enter a verdict for it under leave reserved.   No exception was taken to the charge which is set out in the bill of exceptions.

The facts in their aspect most favorable to the plaintiff which the evidence warranted and the jury with the least degree of propriety might have inferred, in substance, are that at the time of the accident the plaintiff was a police officer of the city of Boston and for five or six months continuously had been engaged in traffic work at the corner of Massachusetts Avenue and Boylston Street from six o'clock every evening until one in the morning; that there was a movable traffic stand at his place of duty which had been in use for about a year; that this stand was a box probably three feet square "and about the size of the witness stand"; that "the bottom of it was six or eight inches from the ground and the top was just above his waistline as he stood in it"; that "it had three sides and a gate in back"; that the plaintiff "stood on a platform that was perhaps eight to twelve inches above the surface of the street"; that "four different street car lines passed the place of the accident, two tracks going each way on Massachusetts Avenue, two tracks going each way on Boylston Street, and four curved

tracks so that the turn can be made either way"; that "traffic is very heavy"; that "there were surface cars and heavy trucks and a lot of pleasure cars and horses and teams"; that since the defendant discontinued the operation of its cars on Boylston Street "no cars pass over" the outbound track going toward the Fenway and "no cars pass over" the track headed south on Massachusetts Avenue; that the traffic box when in use usually stood partly on the westbound track on Boylston Street and partly on the southbound track on Massachusetts Avenue where those two tracks cross each other at right angles, that is to say within the rectangular space bounded by the "dead" track; that on the day of the accident the plaintiff went on duty at his usual time, five minutes before six in the afternoon, and remained at his post until the time of the accident at twenty minutes of seven; that when he went on duty the traffic box was about three feet from the rail of the eastbound track on Boylston Street, and about the same distance from the rail of the northbound track on Massachusetts Avenue; that "from five minutes of six until twenty of seven electric cars passing on Boylston Street passed by the box"; that during the interval the traffic box moved over to a point on or near the eastbound track where it was struck on its corner by the front left-hand corner of a surface car of the defendant running east on Boylston Street, and spun around and into the center door of the colliding car.

The plaintiff testified in direct examination "that while he was in the box from five minutes of six to twenty minutes of seven he did not observe any movement of the box toward the track upon which the car came which struck the box"; that "there was no question about the fact that the box did move from the time he entered it and the time of collision and that there was a reason for his not observing the movement, that reason being that the traffic was so busy there that his whole attention was taken up with the traffic; that he heard no warning of any sort prior to the time of collision between the car and the box."

On cross-examination the plaintiff testified that "Nobody struck the box while he was there before the car did."

He described the circumstances which immediately preceded the collision, in substance, as follows: He had stopped traffic both ways on Massachusetts Avenue by putting up his hands. He then turned back to Boylston Street, held up both hands and stopped traffic both ways. He then faced toward Huntington Avenue, down Massachusetts Avenue, "with his right hand towards the trolley car in question and his left hand in town" and "beckoned the traffic on Boylston Street to come ahead." At that moment the trolley car in question was standing right near the corner inbound on Boylston Street. "It was up with the building line," "the inside line of the sidewalk on Massachusetts Avenue at the crossing"; there were "a lot of automobiles alongside and behind it"; "the car was on the track." He did not look down on the ground in any way before he started traffic on Boylston Street "only when . . . [he] stepped into" the box; he paid no attention to the location of the box from the time he went on duty until the box was struck by the trolley car. He beckoned this trolley car forward on the eastbound track without knowing where the box was situated at the moment and at a time when it was so situated that it was struck or a portion of it was struck by the trolley car. Had he looked down at the ground a single glance would have told him exactly where the box was located with respect to the track. He also testified that he knew that the car was wider than the distance between the rails; that "he did not know the exact distance that the car extended on either side of the track but whatever it was he had seen it at the time of this accident he had seen it every day in the week for four months at this exact spot."

Without regard to G. L. c. 231, § 85, it is plain that the question, whether the plaintiff's failure to observe the change in the position of the traffic box during the forty-five minutes that preceded the collision was a want of due care which contributed to the accident, could not be answered affirmatively upon the evidence that he did not look upon the ground in the direction of the trolley car at the time he directed it to come forward, without also taking into consideration the facts that the traffic was heavy at this hour

of the night and that the safety of the travellers on the way was in a large measure dependent upon the undiverted attention of the traffic officer. In a word, due care consists in reasonable action or restraint in circumstances where there is a duty to act or to avoid action. It could not have been ruled as matter of law that, in the circumstances disclosed, the failure of the plaintiff to observe the position of the box in relation to the rail was a failure of care and a breach of duty which contributed to his injury.

It is also plain that it could not have been ruled as matter of law that the operator of the trolley car was not negligent. It is undisputed that the box was on the track or so near to it as to be within the line of the overhang of the car when that car was started to cross the street. It could well have been found that its position was in the line of vision of the operator if he had looked along the ground in the direction the car was to travel, and it could have been found reasonably that the operator, looking, would have seen that to proceed would be to invite the disaster which in fact followed upon the advance of the car.

The requests for rulings, "7. The motorman of the defendant's car had a right to rely upon the plaintiff's signal. 8. The motorman had a right to assume, upon the plaintiff's signal, that the plaintiff's traffic box was not in a position where it would be hit by the car," were refused rightly because they fail to give consideration to the possible fact, deducible from the evidence, that the box was so far upon, or so near to, the track that the most non-observant operator if he looked along the way at all must have seen that a collision was inevitable if he obeyed the signal given by the traffic officer. Moreover, the rights of the defendant were carefully protected in the charge, which is in accord with the rule formulated in *Donovan* v. *Mutrie*, 265 Mass. 472, 477. See also *Margeson* v. *Town Taxi, Inc.* 266 Mass. 192, 194. We find no error in the refusal of the judge to grant the motion for a directed verdict or in his refusal to give the requests for instructions.

*Exceptions overruled.*